# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| Demetrias Taylor, as Representative of the Estate of Iretha Jean Lilly, Deceased,<br>　　　*Plaintiff,*<br><br>vs.<br><br>McLennan County, David James, Kimberly Riendfliesch, Chris Pryor, Trinecha Outley, Mary Wilson, Sheila Smith, and Desera Roberts,<br>　　　*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 6:16-cv-395<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT SITTING IN THE WESTERN DISTRICT OF TEXAS:

Plaintiffs respectfully come before this Honorable Court complaining pursuant to 42 U.S.C. § 1983, the United States Constitution, and the Texas Constitution that Defendants (1) used unreasonable force on Iretha Jean Lilly ["Lilly"], (2) unreasonably refused to provide Lilly with reasonably adequate medical care despite receiving multiple forms of notice that she required such care, and (3) caused Lilly's untimely death via one or both acts.

## I.  SUMMARY OF THE CASE

1. Defendant James unnecessarily "Tased" Lilly for three separate cycles.

2. Lilly received three EKGs showing she was having a myocardial infarction.

3. Said Defendants refused to provide Lilly with medical care for more than three hours.

4. Lilly died as a result.

5. McLennan County (A) had no policies requiring arresting officers to inform jail officials that an arrestee (1) has been Tased or (2) is accused of using controlled substances and (B) had a procedure that prevented its nurses from sending Lilly to the hospital.

## II.    <u>SUMMARY OF AMENDMENTS</u>

6.  Plaintiffs respectfully amend their Complaint to add:

   a.  specific facts evidencing Defendants' respective wrongdoings;

   b.  Decedent Iretha B. Lilly's surviving children as Plaintiffs:

   c.  new § 1983 claims against Dr. John Wells (<u>see</u> Counts 6 and 7, *infra*);

   d.  facts evidencing Defendants' subjective awareness that Lilly was suffering from a myocardial infarction via (*inter alia*) three separate EKGs;

   e.  facts evidencing McLennan County's liability based on its procedure that prevented jail medical staff from sending inmates suffering from life-threatening medical conditions to the hospital without approval from a doctor (even when that doctor was off-site and unavailable); and

   f.  a cause of action arising for wrongful death/survivorship arising under Texas law (<u>see</u> Count 8, *infra*).

7.  Plaintiffs also voluntarily dismiss from this suit the following Defendants: Sheila Smith, Mary Wilson, and Chris Pryor.

## III.    <u>DEMAND FOR JURY TRIAL</u>

8.  Plaintiff respectfully demands a trial by jury.

## IV.    <u>PARTIES</u>

9.  Plaintiff Demetrias Taylor:

   a.  represents Lilly's estate;

   b.  was at all times relevant hereto an individual residing in the United States in the city of Waco, Texas, McLennan County; and

    c.   may be reached via her attorneys of record, William Pieratt Demond and Meagan Hassan, DEMOND & HASSAN, PLLC, 1520 Rutland Street, Houston, TX 77008.

10. Plaintiffs I.H., a minor (through his next friend and father, Terrance Lamont Hamilton), Dayshalon Ranch, Terranetha Ranch, Kevin Ranch, and Terrance Hamilton:

    a.   are the surviving children of decedent Iretha B. Lilly;

    b.   were at all times relevant hereto individuals residing in the United States; and

    c.   may be reached via their attorneys of record, William Pieratt Demond and Meagan Hassan, DEMOND & HASSAN, PLLC, 1520 Rutland Street, Houston, TX 77008.

11. Defendant McLennan County is a county located in Texas.  It may be served through its attorneys of record, Thomas P. Brandt, John F. Roehm, III, and Stephen D. Henninger, Fanning, Harper, Martinson, Brandt & Kutchin, P.C., Two Energy Square, 4849 Greenville Avenue, Suite 1300, Dallas, TX 75206.

12. Defendant David James is and was at all times relevant hereto an individual residing in the United States and is being sued in his individual capacity as a peace officer with the McLennan County Sheriff's Office.  He may be served through his attorneys of record, Thomas P. Brandt, John F. Roehm, III, and Stephen D. Henninger, Fanning, Harper, Martinson, Brandt & Kutchin, P.C., Two Energy Square, 4849 Greenville Avenue, Suite 1300, Dallas, TX 75206.

13. Defendant Kimberly Riendfliesch is and was at all times relevant hereto an individual residing in the United States and is being sued in her individual capacity as a nurse for McLennan County.  She may be served through her attorneys of record, Thomas P. Brandt, John F. Roehm, III, and Stephen D. Henninger, Fanning, Harper, Martinson, Brandt &

Kutchin, P.C., Two Energy Square, 4849 Greenville Avenue, Suite 1300, Dallas, TX 75206.

14. Defendant Trinecha Outley is and was at all times relevant hereto an individual residing in the United States and is being sued in her individual capacity as a nurse for McLennan County.  She may be served through her attorneys of record, Thomas P. Brandt, John F. Roehm, III, and Stephen D. Henninger, Fanning, Harper, Martinson, Brandt & Kutchin, P.C., Two Energy Square, 4849 Greenville Avenue, Suite 1300, Dallas, TX 75206.

15. Defendant Desera Roberts is and was at all times relevant hereto an individual residing in the United States and is being sued in her individual capacity as a nurse for McLennan County. She may be served through her attorneys of record, Greg Hudson, Hudson & O'Leary LLP, 1010 Mopac Circle, Suite 201, Austin, Texas 78746.

16. Defendant John Wells is and was at all times relevant hereto an individual residing in the United States and is being sued in his individual capacity as a medical doctor in McLennan County's employ at the jail.  He was acting under color of state law at all times relevant hereto.  He may be served wherever he may be found in the State of Texas.

## V.   <u>JURISDICTION AND VENUE</u>

17. This Court has jurisdiction to hear the merits of Plaintiffs' claims because they arise under 42 U.S.C. § 1983.

18. Venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Western District of Texas, Waco Division.

19. All conditions precedent have been performed or have occurred.

## VI.    <u>FACTS</u>

20. On October 6, 2014:

    a.  Lilly was a 37-year-old resident of McLennan County;

    b.  Lilly was five feet, three inches tall weighing approximately 158 lbs.;

    c.  Lilly was a mother to five children;

    d.  Defendant James was employed by the McLennan County Sheriff's Office;

    e.  Lilly attended a 10:30 A.M. hearing at the McLennan County 19th District Criminal Court;

    f.  said court ordered Lilly to take a drug test;

    g.  Lilly took a drug test;

    h.  the results of said drug test showed Lilly tested positive for controlled substances;

    i.  said test showed Lilly tested positive for marijuana, amphetamine, and methamphetamine;

    j.  the judge of said court Ordered Lilly to jail;

    k.  Lilly requested a one hour delay before being confined so that she could make the necessary arrangements concerning her children;

    l.  said court denied Lilly's request;

    m.  Lilly began crying uncontrollably;

    n.  three courtroom Deputies attempted to take Lilly into custody;

    o.  Lilly verbally resisted being taken into custody;

    p.  Lilly refused to place her hands behind her back to be handcuffed;

    q.  Lilly did not attempt to evade arrest by flight; and

    r.  Lilly did not physically assault anyone in said court.

21. An attorney present at all times relevant to the foregoing facts has provided a sworn affidavit stating:

> "What happened next happened so quickly that it's hard for me to explain. Before I knew it there were two more deputies surrounding Ms. Lilly…All I know is that the next time I looked at Ms. Lilly she was on the floor of the courtroom…with three deputies on top of her.  I don't remember hearing them warn her that they were going to tase her prior to taking her down to the ground, but I could see that they had the taser held to her back under her left shoulder blade.  It upset me so bad that I had to take a few steps away from the area.  I began to clench my fists and pace because I was so disturbed by her screams and the scene unfolding in front of me…I felt myself starting to tear up because I wanted to help her and felt helpless to do anything.  She was crying out that her chest hurt and begging them to stop."

22. Defendant James Tased Lilly while she was standing up with her hands together at her chest.

23. Defendant James Tased Lilly up to three times.

24. Immediately after Defendant James' use of his Taser:

    a.   Lilly began to complain of pain in her chest; and

    b.   Lilly requested medical attention.

25. Lilly received no medical care.

26. Shortly thereafter, Lilly was booked into the McLennan County Jail.

27. At the time, Lilly was still complaining of chest pain.

28. Lilly was not admitted to a hospital and did not receive any medical attention.

29. Seven hours after the initial event passed, Lilly continued:

    a.   pleading for medical assistance; and

    b.   complaining of chest pain.

30. Defendants Kimberly Riendfliesch, Trinecha Outley, and/or Desera Roberts:

a.  told Lilly to calm down;

b.  claimed Lilly was just having an anxiety attack;

c.  told Lilly that there was nothing wrong with her; and

d.  refused to provide Lilly with even a scintilla of constitutionally adequate medical
    care.

31. At approximately 5:55 P.M., McLennan County Jail staff provided Lilly with an EKG.

32. Said EKG showed Lilly was suffering from a myocardial infarction.

33. Said EKG specifically said:

a.  "CONSIDER ACUTE STEMI" (capitalization in the original);

b.  "Sinus rhythm";

c.  "Antherolateral ST elevation, CONSIDER ACUTE INFARCT"; and

d.  "Abnormal ECG".

34. Despite these readings, Defendants did not provide Lilly with medical care.

35. Defendant Roberts:

a.  reviewed said EKG approximately 30 minutes later;

b.  knew (or should have known) it was an abnormal EKG;

c.  knew Lilly was complaining of "intermittent chest pain and arm pain";

d.  wanted the EKG repeated before sending it to Dr. Wells;

e.  had no justifiable reason to doubt the accuracy of the EKG;

f.  did not send Lilly to the hospital;

g.  asked that the EKG be repeated when Lilly had calmed down; and

h.  left work.

36. Approximately two hours later, Lilly received two additional EKGs from Defendant Riendfliesch.

37. Both the second and third EKGs were materially similar to the first.

38. Specifically, both the second and third EKG showed Lillly was suffering from a myocardial infarction.

39. Defendant Riendfliesch:

    a. knew (or should have known) Lilly was suffering from a myocardial infarction;

    b. had no medically acceptable reason to doubt the accuracy of the EKGs she administered;

    c. did not send Lilly to the hospital;

    d. did not provide Lilly with any reasonable medical care under the circumstances; and

    e. did not take any efforts to ensure that Doctor Wells was informed of Lilly's condition in a timely manner.

40. Despite these confirmed readings that Lilly was suffering a myocardial infarction for over two hours, Defendant Roberts instructed Defendant Riendfliesch to:

    a. give Lilly four tablets of 81mg Aspirin;

    b. check Lilly's blood pressure; and

    c. provide Lilly with 0.4mg of nitroglycerin.

41. Said care does not even approach sufficiency under the United States Constitution.

42. 0.4mg of nitroglycerin generally provides patients with approximately five minutes of benefits.

43. Defendant Riendfliesch complied with Defendant Roberts' instructions.

44. Lilly was then purportedly placed on a 15-minute watch.

45. Approximately 45 minutes after Lilly's second and third EKG, Dr. Wells called and
spoke with Defendant Riendfliesch concerning Lilly.

46. Defendant Riendfliesch told Dr. Wells that:

   a. Lilly's 8pm EKGs came back similar to the 6pm EKG;

   b. Lilly had calmed down enough to obtain a good reading on the EKG; and

   c. she had provided Lilly with Aspirin and a nitroglycerin tablet.

47. Dr. Wells responded that:

   a. Lilly could be having a myocardial infarction; and

   b. the jail nurses should call him to discuss the matter further.

48. Dr. Wells did not order that Lilly be sent to the hospital.

49. At the time of said call, jail medical staff had notice that Lilly was suffering from a
myocardial infarction for more than two hours and forty-five minutes.

50. Defendant McLennan County has a procedure which prohibits jail nurses from sending
inmates with life-threatening medical conditions to the hospital without a doctor's
approval.

51. McLennan County Jail staff found Lilly asystole (flatlined) in her cell alone at or around
9:09 P.M.

52. Lilly was pronounced dead that same night at or around 10:18 p.m.

53. A subsequent autopsy concluded that Lilly died as a result of atherosclerotic coronary
artery disease, indicating that the "toxic effects of methamphetamine contributed to the
case of death."

## VII.   CAUSES OF ACTION

### Count 1
### 42 U.S.C. § 1983 claim against Defendant James for unreasonable use of excessive force
### (first Taser cycle)

54. The foregoing paragraphs are incorporated herein as if quoted verbatim.

55. At all times relevant hereto, Plaintiff's well-established constitutional right to remain free

    from unreasonable seizures was:

    a.   secured to her by the Fourth Amendment to the United States Constitution;

    b.   violated by Defendant James; and

    c.   clearly established within the Fifth Circuit and the Southern District of Texas.

56. Lilly was injured by Defendant James' conduct.

57. Defendant James' conduct (including the use of a Taser against Lilly):

    a.   was clearly excessive to the need;

    b.   was objectively unreasonable under the circumstances ; and

    c.   caused Lilly to suffer pain, suffering, and death after Lilly was seized.

58. Lilly's pain, suffering, and death resulted directly from Defendant James' use of force that

    was excessive to the need.

59. Defendant unreasonably used excessive force on Lilly.

60. There was no need to use a Taser on Lilly under the circumstances herein.

61. Lilly:

    a.   did not pose any threat to the safety of officers or others; and

    b.   was not attempting to actively resist or evade arrest by flight.

62. No reasonable officer would reasonably believe:

    a.   that a Taser cycle was warranted under the circumstances herein;

    b.  that Lilly posed a threat of serious harm to the officer or to others under the circumstances herein;

    c.  Lilly's alleged crime (which purportedly required her to be seized in the first instance) was sufficiently severe to warrant being Tased under the circumstances herein;

    d.  Lilly was actively resisting arrest; or

    e.  Lilly was trying to evade arrest by flight.

63. Specifically, no reasonable officer would believe that there was a reasonable need to utilize a Taser on a five foot, three-inch-tall, 158-pound woman under the circumstances herein (particularly given the presence of additional officers).

64. Plaintiff seeks punitive damages against Defendant James because he:

    a.  knew there was no reason to deploy his Taser on Plaintiff under the circumstances herein;

    b.  acted with conscious indifference to the imminent possibility that there was no reason to deploy his Taser on Plaintiff under the circumstances herein;

    c.  acted with reckless or callous indifference to Plaintiff's federally protected rights;

    d.  recklessly trampled on Plaintiff's rights through plainly unlawful conduct; and/or

    e.  acted in a grossly negligent manner with respect to Plaintiff.

**Count 2**
**42 U.S.C. § 1983 claim against Defendant James for unreasonable use of excessive force**
**(second Taser cycle)**

65. The foregoing paragraphs (particularly those in Count 1) are incorporated herein as if quoted verbatim and applied to the second Taser cycle used by Defendant James on Lilly.

**Count 3**
**42 U.S.C. § 1983 claim against Defendant James for unreasonable use of excessive force**
**(third Taser cycle)**

66. The foregoing paragraphs (particularly those in Counts 1 and 2) are incorporated herein as if quoted verbatim and applied to the third Taser cycle used by Defendant James against Lilly.

**Count 4**
**42 U.S.C. § 1983 claim against Defendant McLennan County for unconstitutional**
**conditions of confinement that caused Lilly to be exposed to inadequate medical care**
**and/or the arbitrary punishment of a pre-trial detainee**

67. The foregoing paragraphs are incorporated herein as if quoted verbatim.

68. Lilly complained that she needed medical care, McLennan County personnel failed or refused to provide her with medical care in conformity with the accepted and/or unconstitutionally promulgated policies, practices, customs, trainings, and/or procedures thereof, and said failure/refusal resulted in the deliberately indifferent death of an otherwise healthy individual.

69. Specifically, Defendant McLennan County had a procedure that specifically prohibited nurses from sending inmates to the hospital without a doctor's approval, even if (i) there was no doctor on-site at the jail and (ii) inmates were suffering from life-threatening medical conditions.

70. Additionally, Defendant McLennan County had a policy, practice, custom, procedure, or training which permitted its medical intake personnel to:

    a.  perform medical intakes of inmates;

12

b.  fail to medically clear inmates (even after (i) they had been in the jail for more than six hours, (ii) had been Tased, and (iii) had been complaining of chest pain); and

c.  fail to inform the supervising doctor that inmates had not been medically cleared (even after (i) they had been in the jail for more than six hours, (ii) had been Tased, (iii) had been complaining of chest pain, and/or (iv) had an abnormal EKG).

71. The relevant doctor in McLennan County's employ was:

a.  Defendant John Wells;

b.  not on-site at the McLennan County jail at any time relevant hereto;

c.  not available to provide meaningful medical care to Lilly;

d.  not available to reliably review an EKG in a timely manner (even when an inmate was suffering from a life-threatening emergency);

e.  not available to provide meaningful oversight to the nurses in the medical wing at any time relevant hereto;

f.  deliberately indifferent to Lilly's constitutional right to reasonably adequate medical care; and

g.  deliberately indifferent to the People's right to receive emergency medical care when he was not on site.

72. Defendant McLennan County is responsible for providing (*inter alia*):

a.  constitutionally adequate medical care to pre-trial detainees such as Lilly;

b.  training to its employees how to properly handle inmates suffering from life-threatening conditions which could not be treated at the jail; and

c.  procedures to ensure inmates suffering from life-threatening medical conditions received constitutionally adequate medical care.

73. Defendant McLennan County's duties to (*inter alia*) provide adequate medical care to Lilly under the circumstances herein were not negated by any legitimate government interest.

74. Additionally, Defendant McLennan County violated its duties under the United States Constitution to provide Lilly with conditions, practices, rules, or restrictions that could reasonably accommodate her as a pre-trial detainee in its custody, thereby making it liable to Plaintiffs under 42 U.S.C. § 1983.

75. Additionally and/or alternatively, Defendant violated its constitutional duty to refrain from arbitrarily punishing Lilly as a pre-trial detainee.

76. Defendant's duties to prevent its personnel from imposing arbitrary punishment of a pre-trial detainee were not negated by any legitimate government interest.

77. Despite the fact that Lilly was transferred to McLennan County's custody, no personnel thereof ensured that relevant county personnel were informed that Lilly:

   a.   had been Tased once;

   b.   had been Tased twice;

   c.   had been Tased three times;

   d.   had tested positive for amphetamine and methamphetamine; or

   e.   was complaining of chest pain immediately after being Tased.

78. McLennan County's relevant policies, procedures, practices, customs, and/or trainings that permitted Lilly to be transferred into a penal facility without first ensuring that the proper personnel therein were informed that she had (1) been Tased, (2) tested positive for amphetamine and methamphetamine, and (3) been consistently complaining of chest pain were:

   a.   in existence and effect at all times relevant hereto;

   b.   patently inadequate to prevent arbitrary punishment of pre-trial detainees;

     c.   patently inadequate to prevent the provision of constitutionally inadequate medical care to pre-trial detainees;

     d.   the moving force behind Lilly's injury; and

     e.   instituted, created, continued, and/or ratified by McLennan County policymakers.

79. Defendant's policies, procedures, practices, or customs (or lack thereof) caused Lilly's death insofar as they:

     a.   knowingly exposed a pre-trial detainee who had been Tased multiple times by its law enforcement personnel to a known and actual threat of death despite its officers' possession of actual knowledge that Lilly had both tested positive for amphetamine and methamphetamine and had been complaining of chest pain;

     b.   knowingly failed to provide Lilly with a scintilla of medical attention despite her consistent pleas for help; and

     c.   knowingly prevented jail medical staff from sending inmates who were suffering from life-threatening medical issues to the hospital despite (i) the absence of an on-site doctor and (ii) the existence of multiple EKGs showing Lilly was suffering from a myocardial infarction.

80. Defendant McLennan County repeatedly failed to provide constitutionally adequate medical care to Lilly every minute that she was in its custody.

81. The level of medical care provided to Lilly in accordance with McLennan County policies, procedures, practices, customs, or trainings was not reasonably related to a legitimate government objective and therefore constituted punishment in violation of the Fourteenth Amendment.

82. Defendant's duties to Lilly were systematically ignored by its officials as they consistently refused to provide her with even a scintilla of constitutionally adequate medical care under the facts herein.

83. Upon information and belief, McLennan County has not altered its pre-existing relevant policies, procedures, practices, customs, or trainings that were the moving forces behind Lilly's untimely death.

84. Specifically, McLennan County has been plagued by numerous incidents in which its inmates have not been provided with constitutionally adequate medical care, including:

   a. private prison guards within McLennan County being arrested and charged with tampering with records to cover-up the fact that they had lied when they said they complied with a Texas Commission on Jail Standards requirement that potentially suicidal or mentally ill prisoners be checked on every 30 minutes (there, the decedent (Michael Antonio Martinez) had been dead for approximately three hours before he was found);

   b. at least one McLennan County jail facility was not in compliance with the Texas Commission on Jail Standards with respect to adequate medical care at or around the time of Lilly's death;

   c. the holding of inmates at the McLennan County Detention Center (despite the fact that said location was not even certified to hold inmates); and

   d. public statements by McLennan County Judge Scot Felton expressing the official position that McLennan County thinks that despite such failings, it believes the operators of its jails are "excellent".

85. McLennan County has publicly ratified, created, continued, and/or promulgated unconstitutional policies, practices, customs, and procedures with respect to inmate medical care that were the moving force behind Lilly's death.

86. For example, McLennan County had a procedure which prohibited jail nurses from sending inmates to the hospital even when (i) they were suffering from a life-threatening condition and (ii) no doctor was on-site.

87. Jail personnel within McLennan County know, should know, and/or must know that they can fail to provide inmates with constitutionally adequate medical care without

repercussion because such conduct conforms to McLennan County's policies, practices, customs, and/or procedures.

88. Upon information and belief, no one was disciplined or re-trained in connection with Lilly's death.

89. The lack of discipline and/or training evidences:

    a.  that the conduct of McLennan County officials with respect to Lilly conformed to McLennan County's policies, procedures, practices, customs, and/or trainings; and/or

    b.  McLennan County's ratification of its officials' conduct with respect to Lilly.

90. McLennan County officials deliberately or recklessly failed to act despite the fact that its jail conditions:

    a.  were contrary to a constitutionally adequate standard of care;

    b.  were constitutionally inadequate to provide the required medical treatment for a pre-trial detainee who (i) was accused of using amphetamine and methamphetamine, (ii) was Tased on multiple occasions, (iii) was complaining of chest pain, and (iv) was known to be suffering from an untreated myocardial infarction;

    c.  were exceedingly dangerous for an inmate who (i) was accused of using amphetamine and methamphetamine, (ii) was Tased on multiple occasions, (iii) was complaining of chest pain, and (iv) was known to be suffering from an untreated myocardial infarction;

    d.  prevented jail medical staff from providing constitutionally adequate medical care to pre-trial detainees suffering from life-threatening medical emergencies even when (i) they had notice that said inmate was suffering from a myocardial infarction, (ii) there was no doctor on-site, and (iii) said inmate was consistently complaining of chest pain.

91. Alternatively, even if jail nurses were permitted to send inmates to the hospital without a doctor's permission, then McLennan County unreasonably failed to train said nurses concerning said authority because they believed they did not have such authority.

92. McLennan County's failure to institute policies, procedures, practices, customs, and/or trainings which ensured relevant employees were notified that a pre-trial detainee has been Tased three separate times, tested positive for amphetamine and methamphetamine, and/or was suffering from an untreated myocardial infarction violated Lilly's right as a pre-trial detainee to remain free from punitive measures.

93. Placement in McLennan County's custody exacerbated the already obvious significant risk of injury to Lilly under the circumstances herein.

94. Upon information and belief:

    a.  the dangers to pre-trial detainees who had been recently Tased by law enforcement officers were not unknown to Defendant (including its individual jailors and policymakers) at the time Lilly was taken into custody;

    b.  the dangers to pre-trial detainees who McLennan County officers believed had been recently using amphetamine and methamphetamine were not unknown to Defendant (including its individual jailors and policy-makers) at the time Lilly was taken into custody;

    c.  the dangers to pre-trial detainees who had been recently Tased by law enforcement officers and were believed to have been using amphetamine and methamphetamine were not unknown to Defendant (including its individual jailors and policy-makers) at the time Lilly was taken into custody; and

    d.  no one on-site at any time during Lilly's detention who was responsible for her medical care was competent to interpret an EKG which showed she was actively suffering from a myocardial infarction.

95. The dangers of transferring pre-trial detainees to a McLennan County penal facility without having policies, procedures, practices, customs, or trainings in effect which ensured

officers thereat were informed that such detainees had recently been Tased and/or allegedly exposed to certain types of controlled substances were open and obvious insofar as all reasonable persons would realize such information would foreseeably be necessary before officials could provide such detainees with constitutionally adequate medical care.

96. The absence of policies, procedures, practices, customs, or trainings which prevented the harm herein was a deliberate choice by McLennan County policymakers.

97. Lilly's claims that she was in physical pain after being Tased three times by a McLennan County officer placed a multitude of Defendant's personnel on notice that significant harm would befall her in its custody if its officers refused to provide her with constitutionally adequate medical care.

98. McLennan County knows that its relevant officers, employees, and/or contractors were wrong under the circumstances herein.

99. Plaintiff expects that discovery will support her allegation that Defendant's policies, procedures, practices, customs, and/or trainings were defective, incomplete, and/or routinely ignored by its officers and that Defendant had actual notice of same through its policymakers.

100. The individual jailors who initiated Lilly's transfer into McLennan County custody must have been aware of the significant risk of injury to a person like Lilly who had been Tased multiple times and was accused of using amphetamine and methamphetamine.

101. Further, the policymakers in the jail must have been aware that their relevant policies, procedures, practices, customs, and/or trainings were either

    a. inadequate for the preservation of civil rights of its inmates or to honor its inmates' civil rights and/or

    b. flagrantly disregarded by its officers.

102. The actual injury which Lilly sustained (*i.e.*, death) was foreseeable and preventable under the facts herein.

103. McLennan County is liable because it did not have the resources to treat foreseeable myocardial infarctions and required inmates suffering therefrom to receive doctor approval before being transferred to the hospital, even when there was no doctor on site.

**Counts 5-7**
**42 U.S.C. § 1983 claim against Defendants Riendfliesch, Roberts, and Outley for failing to provide Lilly with constitutionally adequate medical care**

104. The foregoing paragraphs are incorporated herein as if quoted verbatim.

105. On October 6, 2014, Defendants Riendfliesch, Outley, and Roberts were:

   a. licensed and accredited nurses within the State of Texas;

   b. employed by the Health Services Division of McLennan County Jail;

   c. employed by McLennan County as medical personnel;

   d. assigned to the particular unit in which Lilly was being held; and

   e. directly responsible for providing Lilly with medical care.

106. On October 6, 2014, Lilly was booked and processed into the McLennan County Jail and placed within a holding cell under the care of said Defendants.

107. Defendants Riendfliesch, Outley, and/or Roberts:

   a. knew or should have known that Lilly was under the influence of and/or affected by substances with a known propensity to increase the risk of harmful cardiac events;

   b. were directly informed by Lilly that she was in constant and excruciating physical pain;

   c. had the responsibility to ensure that proper precautions and medical procedures were taken subsequent to the use of force involving multiple uses of a Taser to

ensure Lilly's continued health and well-being in light of the known and potentially lethal consequences of the same; and

d.   had a duty to provide Lilly with reasonably adequate medical care given their knowledge of facts which would lead a reasonable medical care provider to conclude that hospitalization was necessary in order to save Lilly's life and prevent her from suffering unnecessary pain and discomfort prior to her death.

108. During her confinement in the McLennan County Jail on October 6, 2014, Lilly continuously informed Defendants Riendfliesch, Outley, and/or Roberts that she was in constant and agonizing pain.

109. Specifically, Defendant Outley was responsible for medically clearing each inmate as he or she was booked into the jail and did not do so with regard to Lilly.

110. Instead, Outley:

a.   placed her in a suicide prevention cell;

b.   did not request an EKG until nearly 6:00pm (6.5 hours after Lilly was booked into the jail); and

c.   did not send Lilly to the hospital.

111. Additionally, Outley did not inform Dr. Wells at any time that Lilly:

a.   had been Tased;

b.   had chest pain;

c.   was not medically cleared; or

d.   needed to go to the hospital.

112. Moreover, during her confinement in the McLennan County Jail, Lilly:

a.   began to grab her left side around her left chest;

21

  b. could not walk; and

  c. could not hold herself up under her own power.

113. During this time, Defendants Riendfliesch, Outley, and/or Roberts:

  a. told Lilly there was "nothing wrong with [her]";

  b. expressed their belief that Lilly was just having an anxiety attack;

  c. dismissed Lilly's pain as either inconsequential, psychosomatic, and/or not of any real concern;

  d. continued to hold Lilly in her cell despite the plain and obvious symptoms of a potentially life-threatening condition that was obviously apparent to any reasonably trained medical personnel;

  e. failed to monitor Lilly's deteriorating condition;

  f. ignored Lilly's cries for help;

  g. ignored Lilly's moans of pain;

  h. failed to take Lilly's life-threatening condition seriously;

  i. provided Lilly with one or more EKGs;

  j. looked at one or more of Lilly's EKGs;

  k. knew (or should have known) from said EKG that Lilly was suffering a myocardial infarction;

  l. knew they did not secure timely assistance in reviewing Lilly's EKGs;

  m. knew Lilly's EKGs needed to be interpreted by someone who could accurately read them;

  n. had no medically acceptable reason to question the accuracy of said EKG(s); and

  o. knew Lilly was complaining of chest pain.

114. Alternatively, said Defendants did not know Lilly was suffering from a myocardial infarction because they were plainly incompetent.

115. Defendants Riendfliesch, Outley, and/or Roberts exhibited deliberate indifference to Lilly's health and well-being by failing to treat Lilly's plainly obvious life-threatening condition given the obvious seriousness thereof.

116. At the time that Lilly complained about chest pains and had one or more EKGs showing that she was having a myocardial infarction, all reasonably trained medical staff and peace officers would know that:

    a. Lilly required medical attention;

    b. Defendants herein were incapable of providing the medical attention that Lilly required;

    c. complaints about chest pains frequently presaged major cardiac events;

    d. a patient indicating chest pain subsequent to the use of a "Taser" against them warrants a heightened level of medical scrutiny to prevent cardiac events;

    e. a patient who had been accused of using amphetamine and methamphetamine and was indicating chest pain after being Tased warrants a heightened level of medical scrutiny to prevent cardiac events;

    f. constant monitoring of Lilly's condition was necessary under the circumstances herein;

    g. failure to reasonably monitor Lilly's condition under the circumstances herein evidences a subjective, conscious indifference to the possibility that Lilly would suffer a life-threatening event;

h.   amphetamine and methamphetamine use can cause elevated blood pressure in a patient;

i.   amphetamine and methamphetamine use can cause a greater risk for cardiac arrest;

j.   a patient who tested positive for amphetamine and methamphetamine use was at a higher risk for a potentially life-threatening cardiac event, including cardiac arrest;

k.   disregarding a patient's complaints about chest pain who had previously tested positive for amphetamine and methamphetamine use and was recently Tased constitutes callous disregard of the patient's life; and

l.   disregarding one or more EKGs evidencing that a patient was actively experiencing a myocardial infarction constitutes deliberate and callous disregard for that patient's life.

117. No reasonable medical care provider would ever believe that it was reasonable to disregard:

a.   one or more EKGs showing a patient was suffering from a myocardial infarction; or

b.   complaints of chest pain from a 37-year-old woman who had recently been Tased and accused of using amphetamine and methamphetamine.

118. Plaintiff seeks punitive damages against these Defendants because they:

a.   knew there was no constitutionally acceptable reason to disregard Lilly's need for medical attention under the circumstances herein;

b.   acted with conscious indifference to the imminent possibility that Lilly would die under the circumstances herein;

c.   acted with reckless or callous indifference to Lilly's federally protected rights;

d.   recklessly trampled on Lilly's rights through plainly unlawful conduct; and/or

e.   acted in a grossly negligent manner with respect to Plaintiff.

**Count 8**
**42 U.S.C. § 1983 claim against Dr. John Wells for failing to provide Lilly with constitutionally adequate medical care**

119. The foregoing paragraphs are incorporated herein as if quoted verbatim.

120. Defendant Wells:

    a.  had a duty to ensure that Lilly was provided with reasonably adequate medical care;

    b.  had notice that Lilly was suffering from a myocardial infarction;

    c.  was not on-site at the jail;

    d.  was not available;

    e.  knew Lilly received an EKG;

    f.  knew Lilly received a second EKG;

    g.  knew Lilly received a third EKG;

    h.  knew said EKGs demonstrated that Lilly was suffering from a myocardial infarction;

    i.  had no reason to doubt the accuracy of said EKGs;

    j.  knew he was the only person authorized to send Lilly to the hospital;

    k.  knew Lilly required medical care to survive;

    l.  knew the nurses caring for Lilly could not reliably interpret her EKGs;

    m.  knew the medical care Lilly required could not be provided at the McLennan County jail;

    n.  refused to order that Lilly be admitted to the hospital for life-saving medical care;

    o.  was deliberately indifferent to Lilly's need for life-saving medical care;

    p.  refused to provide Lilly with reasonably adequate medical care;

    q.  had no reason to doubt the accuracy of her EKGs; and

    r.  caused Lilly's death.

121. At the time that Dr. Wells received Lilly's EKG, any similarly situated reasonable medical professional would have known that:

    a.  Lilly was having a myocardial infarction;

    b.  Lilly required medical attention;

    c.  Lilly would die without medical attention; and

    d.  disregarding one or more EKGs evidencing that a patient was having a myocardial infarction constitutes deliberate and callous disregard for that patient's life.

122. No reasonable medical care provider would ever believe that it was reasonable to disregard Lilly's EKGs under the circumstances herein.

123. Plaintiff seeks punitive damages against Dr. Wells because he:

    a.  knew there was no constitutionally acceptable reason to disregard evidence demonstrating Lilly was suffering from a myocardial infarction;

    b.  acted with conscious indifference to the imminent possibility that Lilly would die under the circumstances herein without being sent to the hospital;

    c.  acted with reckless or callous indifference to Lilly's federally protected rights;

    d.  recklessly trampled on Lilly's rights through plainly unlawful conduct; and/or

    e.  acted in a grossly negligent manner with respect to Plaintiff.

**Count 9**

**42 U.S.C. § 1983 claim against Dr. John Wells for supervisory liability**

124. The foregoing paragraphs are incorporated herein as if quoted verbatim.

125. On September 4, 2016, Defendant Wells:

    a.   was a supervisor in the medical wing of the McLennan County Jail;

    b.   had a duty to supervise medical care providers in the medical wing of the McLennan County Jail;

    c.   failed to supervise medical care providers in the medical wing of the McLennan County Jail;

    d.   was not on-site at the McLennan County jail;

    e.   was not available to provide Lilly with medical care;

    f.   deliberately ignored the fact that he made it impossible for Plaintiff to receive life-saving medical care when he was off-site and unavailable;

    g.   failed to designate a person authorized to send inmates to a hospital for medical care when he was off-site and unavailable;

    h.   recklessly disregarded the foreseeable harm that would occur to inmates in McLennan County's custody when he was off-site and unavailable; and

    i.   intentionally disregarded facts that would lead any rational medical professional who was also acting as a supervisor to know that inmates suffering from myocardial infarctions required a means through which they could secure life-saving medical care when they were off-site and unavailable.

126. Defendant Wells' failure to supervise the nurses in the medical wing of the McLennan County Jail:

    a.   caused Lilly to be deprived of her constitutional rights under color of state law;

b. was grossly negligent;

c. was deliberately and consciously indifferent to Lilly's clearly established rights;

d. created an unusually serious risk that Lilly would be seriously and unnecessarily injured;

e. was perpetuated despite his actual knowledge or willful blindness to the unusually serious risk that Lilly would be unnecessarily and seriously injured; and

f. was perpetuated despite the existence of obvious and available steps to address the unusually high risk that Lilly would be unnecessarily and seriously injured by nurses thereat.

127. It was plainly obvious that Defendant Wells could have (*inter alia*):

a. assigned a "lead nurse" who was authorized to send inmates to the hospital when he was off-site and unavailable;

b. trained his nurses how to identify life-threatening myocardial infarctions;

c. ensured that at least one nurse knew how to read an EKG (particularly when he was off-site); and

d. trained his nurses how to identify potentially life-threatening conditions (*e.g.,* myocardial infarctions) that required immediate supervision.

128. Defendant Wells unreasonably permitted nurses under his supervision to:

a. ignore Lilly's myocardial infarction; and

b. refrain from sending someone who was suffering from a life-threatening condition to the hospital.

129. All reasonable medical professionals would know:

a. failing to ensure that subordinate nurses could recognize and properly respond to life-threatening medical conditions would result in death or serious injury to inmates under their care;

b. failing to supervise nurses could foreseeably result in serious bodily injury;

c. no reasonable medical professional would ignore or disregard evidence of an active myocardial infarction in a patient when that medical professional was the only person with the authority to transfer the patient to a hospital;

d. no reasonable medical professional could close their eyes to the deprivation of the People's clearly established constitutional rights occurring in their presence;

e. Defendant Wells (and his subordinates) had a duty to protect Plaintiff from deprivations of clearly established constitutional rights inflicted by nurses under his supervision;

f. the individual nurses' conduct under these particular circumstances was patently unreasonable in light of clearly established law; and

g. the individual nurses' refusal to provide Plaintiff with reasonable medical care under the circumstances was a knowing violation of the law.

130. Defendant Wells' conduct in permitting nurses under his command to deprive Plaintiff of her clearly established right to Due Process was:

a. deliberately indifferent;

b. plainly incompetent;

c. a knowing violation of the law;

d. an intentional violation of the law;

e. objectively unreasonable under the circumstances; and

29

      f.   a moving force behind Plaintiff's injuries.

131. Plaintiffs seek punitive damages against Defendant Wells because he:

      a.   knew there was no justifiable cause to deprive Plaintiff of her constitutional rights under the circumstances herein;

      b.   acted with conscious indifference to the imminent possibility that nurses under his command would refrain from sending a person suffering from a life-threatening condition to the hospital;

      c.   acted with reckless or callous indifference to Plaintiff's federally protected rights;

      d.   recklessly trampled on Plaintiff's rights through plainly unlawful conduct; and/or

      e.   was grossly negligent with respect to Plaintiff.

**Count 10**
**Texas law – Wrongful death/survivorship**

132. The foregoing paragraphs are incorporated herein as if quoted verbatim.

133. Plaintiffs Dayshalon Ranch, Terranetha Ranch, Kevin Ranch, Terrance Hamilton, and I.H., (a minor) are the surviving children of Iretha B. Lilly, decedent.

134. Decedent died as a result of Defendants' wrongful conduct.

135. Decedent would have been entitled to bring suit against Defendants for violation of her rights had she survived.

136. Defendants' conduct causing decedent's death was a cause of injury to Plaintiffs, resulting in actual and punitive damages under Texas law.

137. Plaintiffs seek unliquidated damages within the jurisdiction limits of this Court.

138. Plaintiff seeks punitive damages against these Defendants under Texas Constitution, Article 16, Section 26 because (*inter alia*):

    a.   decedent's death resulted from defendant's willful act or omission; or

    b.   decedent's death resulted from defendant's gross negligence.

## VIII.   <u>DAMAGES</u>

139. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injuries and damages.

140. Plaintiffs therefore seek compensatory damages (including legal fees, lost future earnings, lost wages, and mental distress), presumed damages, nominal damages, and punitive damages.

## IX.   <u>ATTORNEY FEES</u>

141. After prevailing herein, Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988.

## X.   <u>PRAYER</u>

142. For these reasons, Plaintiff asks for judgment against Defendants for the following:

    (a)     compensatory damages;

    (b)     presumed damages;

    (c)     nominal damages;

    (d)     punitive damages;

    (e)     reasonable attorney fees;

    (f)     costs of suit; and

    (g)     all other relief to which Plaintiff shows himself entitled, both at law and in equity.

Respectfully submitted,

*/s/ William Pieratt Demond*

William Pieratt Demond
Attorney-in-charge
Texas Bar No. 24058931
Email: william.demond@demondhassan.com

Meagan Hassan
Texas Bar No. 24065385
Email: meagan.hassan@demondhassan.com

DEMOND & HASSAN, PLLC
1520 Rutland Street
Houston, TX 77008
Tel: 713.701.5240
Fax: 713.588.8407
ATTORNEYS FOR PLAINTIFFS


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by electronic notice to all parties of record on this the 14th day of July, 2017.

*/s/ Meagan Hassan*
Meagan Hassan